Oliver W. Hamilton Mr. Tompkins, when you're ready. Thank you, Your Honor, and may it please the Court, I am John Tompkins here representing Oliver Hamilton. Mr. Hamilton contends that the District Court abused its discretion when it imposed a sentence of 60 months of incarceration, 150 percent more than what the high end of his guideline for a level 15 criminal history category 1 offense warrants, and double what the government asked for in their over-guideline 30-month request. Now, are you arguing that the provision in 3553A that permits the District Court judge to take general deterrence into account is invalid? It's not invalid, but it does not apply to Mr. Hamilton's case. The judge thought it did. He clearly did, Your Honor, and we clearly disagree. Delacroix says that general deterrence is only available in limited circumstances and must be tempered by individual characteristics. And we read that to mean both the individual characteristics of the individual and the individual characteristics of the offense. What reason is there to think the judge didn't do all of that here? Well, Your Honor, in the Court's memorandum, the District Court's memorandum, the Court's 28 pages discuss several topics that are not consistent with developing a general deterrence theory. But he says at page 27 of this memorandum, the Court again stresses that it is in no way attributing all the evils outlined in this memorandum solely to Hamilton, using the information to get perspective, invites a response. He's not just sort of slapping down the table and saying, you know, the whole area is doomed. Well, Your Honor, in trying to send a general deterrence message, the District Court cited two particular cases, the Braxton case and the Johnson case in that memorandum. The Braxton case where a police chief lied to agents when confronted with his wrongdoing and the Johnson case where an employee of a department lied to agents and also lied to a grand jury, inciting needing to send a message of general deterrence. Using Hamilton's individual characteristics and the characteristics of his defense to send a message to that type of potential defendant in the future is inappropriate. Hamilton accepted responsibility immediately, never lied to the agents, waived being indicted, cooperated and set up restitution. If a District Court wants to send a message to cases and defendants like Braxton and Johnson, it shouldn't be sentencing someone like Hamilton, who fully cooperates, waives indictment, provides information and arranges for restitution, saying we're going to give this defendant, Hamilton, an increased sentence, lower than what people who lie to agents and lie to grand juries get. They should be getting a message from Hamilton's case that if they hadn't lied to agents and if they hadn't lied to the grand jury, they wouldn't have been treated as severely. But he cuts Hamilton some breaks, too. He's not probing into the nine hotel rooms and two cars. He's not really probing the charges on this public credit card, which apparently amount to several hundred thousand dollars, and yet they're just sticking with $40,001. So I get the sense of a District Court judge looking at the particulars of this man, deciding that a longer sentence is necessary. He knows that the guidelines are advisory. Everybody's had that drummed into their head for a long time now, and he thinks 60 months is the right sentence. Well, Your Honor, to address directly this question about hundreds of thousands of dollars, that's really not a valid argument by the District Court. First of all, this is a defendant who fully cooperated. The individual characteristics of this offense, it's a credit card and receded series of transactions. This is not a hard audit to conduct if you think that there is additional money that hasn't been discovered by the agents. There could have been an order for a special master to do an audit. There could have been a request that the agents provide further information to the District Court. But simply saying, when the government says, with the full cooperation of Mr. Hamilton and all the records of these transactions available to them, that they cannot meet a preponderance standard, that is a strong piece of evidence that that $100,000 to $200,000 that the court is speculating about should not be used and is an abuse of discretion to use to add to the top of the 24-month high end of his sentencing range. So we dispute whether that $100,000 is properly used by the District Court or is speculation part of his abuse of discretion. We believe it's speculation part of his abuse of discretion, especially given the tools available to answer those questions. I would point out along the lines of that same question, on page 5 of the court's sentencing memorandum, the court said that the extent of Hamilton's thievery will never be calculated accurately. Again, the nature of this fraud, the individual characteristics of this crime documented in credit card receipts, the record reflects use of receipts from the township to known payees, clearly not a correct statement within the memorandum provided by the District Court. But what the judge also says, he's looking at Hamilton's crime, he says it overshadows the good things that he's done, you know, the letters and stuff, because as the judge put it, he chose corruption and greed while hoodwinking the community into believing that he was helping them. And he really sees this as a betrayal. He may see it as a betrayal, Your Honor, and in fact it is a betrayal. It's reflected in the nature of the offense and in the guidelines themselves. Hamilton received a 6th level increase because of the amount of loss. But the judge is saying he doesn't see it. I mean, I guess in some ways maybe the questions I'm trying to ask you are all, the District Court judge has made these determinations. He's come up with this sentence. You know, if the three of us were to sit down and do it all over again, I don't know whether we would come up with 60 months or something different, but that's not our role. But, Your Honor, in part of making these determinations, there are clear errors. For instance, where the District Court characterized Hamilton's fraud as staggering. It's $40,000. Now, that is a bad thing, but that is reflected by a 6th level increase already in the loss table in the guidelines. It works out to be $606 a month on average for the 66 months. The fact that it took 66 months to accumulate it means the duration of the offense is partially reflected in the guideline addition. And we cannot forget, he also received an increase in offense level because of the abuse of trust. The District Court does not in any way analyze how those increases in offense level are inadequate. All they say is this is a staggering offense. We disagree. The individual characteristics of this particular offense do not appear to be staggering. It does not appear to be there were no false books created. There were no cash payments. No, we understand that. If you want to save a minute for rebuttal, maybe this would be a good time to do that. Certainly, Your Honor. Thank you very much, Judge. Thank you. Mr. Smith? Thank you. May it please the Court. To correct an unknowing misstatement, Oliver Hamilton did not cooperate. He agreed to plead guilty. At no time did he cooperate. At no time did he go into detail with agents or myself as to how much he took or how he took it. We'd be in a different posture with that, and that's why we're at those dollars. At no time did he cooperate. That was part. He refused to cooperate. Now, with that said, let me give you the backdrop to the Oliver Hamilton, as elected township supervisor for East St. Louis, his sentencing. The principal federal courthouse, as you know, for the Southern District of Illinois, sits in the heart of East St. Louis. Some of us, indeed, perhaps all three of us have visited it. Chief Judge Reagan has been there for 17 years handling cases, handling numerous public corruption cases. That is the backdrop that he takes to this when he sees in notes in his sentencing memorandum during those 17 years the increase in crime, the increase in poverty, the exodus of people from East St. Louis. Now, why is that relevant? See, that's why I asked about general deterrence. I do not read what Chief Judge Reagan is talking about as a specific deterrence argument. You know, Mr. Hamilton's done what he's done. Maybe he's not going to do it again. Maybe he won't be in a position to do it again. But there's this concept of general deterrence, and there's actually an interesting debate about the extent to which one person should get a longer prison sentence just to, quote, send a message to the community at large. So it sounds to me like you're saying that that's exactly what Chief Judge Reagan was doing, sending a message to the East St. Louis community, cut out the corruption, cut out the crime, the graft, et cetera. I think he says, but in part, because he also noted, if you'll note, that at the time Oliver Hamilton was committing his offenses for over five years, five and a half years, he noted that people out of the Metro East were being prosecuted at the same time for public corruption. It served as no deterrent to Oliver Hamilton. At the same time he was committing the offenses, numerous public officials were serving their federal prison sentence. It served as no deterrence to Oliver Hamilton. What was significant to Judge Reagan is at the same time that he was committing these offenses, Oliver Hamilton was in charge of, as the elected township supervisor, providing services to the poor and disadvantaged. Now, we can't say that the money he stole caused the disruption of those services, but in the backdrop, at the same time he was stealing, they stopped giving medical care, they stopped giving dental, pharmaceutical care. Purely township money? No, it comes from lots of sources, but it is township money, apart from the ceasefire money. It comes into the township and he distributes it. Yes, sir. The ceasefire money, you know where it came from. There's no evidence he ever did anything except go to conferences with his friends for a ceasefire. So why didn't the government pursue this? You know, I mean, nine hotel rooms and two cars does sound like quite a bit to me, and this sort of idea that maybe there was more questionable on the charge card. It seems like you could have put evidence in the record that would have been a guidelines level support for a higher sentence, but this doesn't happen, which is maybe a question. Correct. You know, there are two factors going on with some of the money being spent, whether it's for construction material or gasoline or car washes. It becomes hard to say if it's for the township or for him personally. So we tried to make a very clean, fair hit, if you will, and move quickly, and that's exactly what we did. Rather than spend years trying to nitpick at an investigation with an Oliver Hamill that wasn't cooperating, and the people in the township, for the most part, weren't cooperating, so we only had the cold records that we subpoenaed. So we had to go with what we had, but that's why there's evidence in the record of misspending, not necessarily criminal misappropriation, but misspending of much more money. So the difference between, you're saying the difference between waste and crime, basically. Yes. So, you know, when you look at the services that were cut at the same time that he was stealing and that it occurred over that period of time, that's why Judge Reagan saw the individual citizens of East St. Louis as subvictims, if you will, not victims for purposes of the guidelines, but certainly victims considering the nature and circumstances of the offense under 3553A. He's got a wealth of knowledge and experience on the issue. You may ask, well, why did I recommend 36 months? Well, in some respects I'm guided because, and constrained, because I appear before lots of judges. Post-Booker, sometimes it's hard in a nonviolent case in some courts to get a guideline sentence. A lot of them are below. In this case, Judge Reagan had the immense insight and experience to give an appropriate sentence of 60 months. You're not the only AUSA who has come and defended a sentence that was higher than the one that that person recommended. I mean, that does happen. Sometimes district judges see it differently. Yes. Thank you. Sure. All right. Thank you very much. Anything further, Mr. Tompkins? Thank you very much, Your Honor, and very briefly I will return to the theory of general deterrence and point out that nowhere in the 28-page memorandum or in the court's colloquy did the court thoroughly examine the theory of general deterrence, although the National Institute for Justice recently published one of their five points bulletins about general deterrence, and two of those five points, number one being the certainty of being caught is vastly more powerful as a deterrent than the punishment, and the second being sending individuals to prison isn't a very effective way to deter crime generally. It may deter specifically, which was not an issue here. The district court said it was an issue, but it does not effectively deter generally. If there are no further questions, thank you very much. All right. Thank you very much. We'll take the case under advisement.